1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    WHITNEY A. JONES,                          No.  2:23-cv-00339-TLN-EFB

12              Plaintiff,

13         v.                                    FINDINGS AND RECOMMENDATIONS

14    COMMISSIONER OF SOCIAL
      SECURITY,
15
                Defendant.
16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18    denying her application for disability insurance benefits under Title II of the Social Security Act.

19    ECF No. 1.  The parties' cross-motions for summary judgment are pending.  ECF Nos. 12 & 18.

20    For the reasons provided below, the undersigned will recommend that plaintiff's motion for

21    summary judgment be granted and the Commissioner's motion for summary judgment be denied.

22    I.    **Background**

23          On September 24, 2020, plaintiff filed an application for disability insurance benefits

24    (DIB) under Title II of the Social Security Act (Act), alleging disability beginning April 24,

25    2018.[1]  Administrative Record (AR) 13.  Plaintiff alleged she was disabled due to cervical and

26    _____

27          [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
      Social Security program, 42 U.S.C. §§ 401 *et seq*.  Supplemental Security Income is paid to
      disabled persons with low income.  42 U.S.C. §§ 1382 *et seq*.  Under both provisions, disability is
28    defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically

                                          1

lumbar spine conditions, sciatic pain, anxiety, chronic pain including pain in arms, legs, and hips, frequent headaches, and osteoarthritis.  AR 20.  Plaintiff's application was denied initially and upon reconsideration.  AR 13.  After a telephonic hearing before an administrative law judge (ALJ) on March 21, 2022, at which plaintiff was represented by counsel (AR 34-61), the ALJ published an unfavorable decision on March 29, 2022.  AR 13-28.

At the hearing, plaintiff testified that she was born in 1962 and had a sixth-grade education.  AR 43.  She obtained her GED and worked as a medical assistant for seven years and as a truck driver for sixteen years.  AR 43-44.  She stopped working in April 2018 because of severe pain in her neck that "goes down my arms, which causes me not to have strength in my hands[.]"  AR 44-45.  Neck surgery in 2018 temporarily eased the pain; when it returned, plaintiff's surgeon recommended a second surgery to fuse her cervical spine, which she was "not ready for[.]"  AR 45-46.  Plaintiff testified that she could lift five to seven pounds and stand or sit

---

determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The steps are:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id*.

for half an hour at a time.  AR 48-49.  She took medication for anxiety and depression, and she found it hard to focus and remember things.  AR 49-51.  Upon questioning from the ALJ, plaintiff further testified that she obtained custody of her "mentally challenged" grandson in December 2016, and the stress caused her to "[fall] apart," affecting her job as a medical assistant.  AR 53. In May 2018, she could lift her 33-pound grandson, but she would drop him; after undergoing surgery in November 2018, she couldn't lift him at all.  AR 54.

Vocational expert (VE) Thomas Satoris testified that plaintiff's past jobs included medical assistant, which had a light exertional level per the Dictionary of Occupational Titles (DOT).  AR 56.  He further testified that a person with the same age, education, and work experience as plaintiff, limited to light work as set forth in the determined residual functional capacity (RFC), could perform the job of medical assistant as generally performed and defined in the DOT.  AR 57-58.  However, if such a person were off-task 15 percent of the time and missed three days a month or more, he testified, she could not perform that job.  AR 58-59.

The ALJ determined that plaintiff had not been under a disability during the period at issue (April 24, 2018 through March 29, 2022), finding as follows:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since April 24, 2018, the alleged onset date.

3.  The claimant has the following severe impairments: (1) lumbar, thoracic, and cervical spine problems . . . with pain/ sciatica/radiculopathy/cervicalgia, status post-cervical fusion (November 14, 2018); (2) obesity; (3) bilateral carpal tunnel syndrome with bilateral hand numbness status-post right wrist release surgery; (4) sensorineural hearing loss bilaterally; and (5) chronic pain syndrome.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently in light work as defined by the regulations.  She can stand and/or walk for 6 hours in an 8-hour day.  She can sit 6 hours in an 8-hour day. . . . She may frequently engage in work activity requiring flexion, extension, and rotation of the neck.  With the upper extremities, she may frequently reach in all directions, push, pull, handle, finger, and feel.  With the lower

extremities, she may frequently push, pull, and engage in foot pedal operations. . . .

6.  The claimant is capable of performing past relevant work as a medical assistant.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.  The claimant has not been under a disability, as defined in the Social Security Act, from April 24, 2018, through the date of this decision.

AR 15-28.

## II.      Standard of Review

The court will uphold the Commissioner's decision that a claimant is not disabled if substantial evidence in the record supports the Commissioner's findings of fact and the Commissioner applied the proper legal standards.  *Schneider v. Comm'r of the SSA*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III.      Claims

Plaintiff claims that the ALJ made the following errors: (1) the ALJ erred by failing to find several of plaintiff's impairments severe; (2) the ALJ erred by discounting the opinion of a treating physician's assistant (PA); (3) the ALJ erred by discounting plaintiff's subjective symptom testimony; and (4) the RFC is not based on substantial evidence.

4

1     **IV.**     **Analysis**

2          1.     Credibility

3          Plaintiff claims that the ALJ erred by discounting her credibility as to her subjective

4     symptoms.  She argues that the ALJ failed to identify the testimony he found not credible and link

5     these findings to evidence in the record, as required.

6          The ALJ summarized plaintiff's symptom allegations, including chronic pain and pain

7     throughout her body, and continued:

8              She reported having constant exhaustion and that her severe arm and
              neck pain required medication that limited physical activity. She
9              reported having problems with many activities, including lifting,
              walking, sitting, using her hands, standing, and bending.   She
10             reported taking baclofen, Crestor, diclofenac, estradiol, gabapentin,
              Lexapro, pantoprazole, and Singulair, with side effects of drowsiness
11             from baclofen, gabapentin, and Lexapro.

12    AR 20-21 (record citations omitted).  The ALJ determined that, while plaintiff had multiple

13    severe physical impairments, including chronic pain syndrome, "the claimant's statements

14    concerning the intensity, persistence, and limiting effects of these symptoms are not entirely

15    consistent with the medical evidence and other evidence in the record for the reasons explained in

16    this decision."  AR 21.

17         The ALJ determines whether a disability applicant is credible, and the court defers to the

18    ALJ's discretion if the ALJ used the proper process and provided proper reasons.  *See, e.g.,*

19    *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make

20    an explicit credibility finding.  *Albalos v. Sullivan*, 907 F.2d 871, 873-74 (9th Cir. 1990).  In

21    evaluating whether subjective complaints are credible, the ALJ should first consider objective

22    medical evidence and then consider other factors.  *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th

23    Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may

24    consider the nature of the symptoms alleged, including aggravating factors, medication, treatment

25    and functional restrictions.  *See id.* at 345-47.  The ALJ also may consider: (1) the applicant's

26    reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2)

27    unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

28    of treatment, and (3) the applicant's daily activities.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th

1    Cir. 1996); *see generally* SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.

2    Work records, physician and third-party testimony about nature, severity and effect of symptoms,

3    and inconsistencies between testimony and conduct also may be relevant.  *Light v. Social Security*

4    *Administration*, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

5    debilitating medical problem may be a valid consideration by the ALJ in determining whether the

6    alleged associated pain is not a significant nonexertional impairment.  *See Flaten v. Secretary of*

7    *HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).

8          "Without affirmative evidence showing that the claimant is malingering, the

9    Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

10   *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *see also*

11   *Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020).  When discounting subjective

12   testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so."  *Wade v.*

13   *Saul*, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing *Lambert*, 980 F.3d at

14   1277–78.  This standard does "not require ALJs to perform a line-by-line exegesis of the

15   claimant's testimony[.]"  *Lambert*, 980 F.3d at 1277.  However, an ALJ's detailed overview of

16   the claimant's medical history—coupled with a nonspecific boilerplate conclusion that her

17   testimony is "not entirely consistent" with her medical treatment—is not enough to satisfy the

18   minimal requirements for assessing credibility.  *Id.* at 1277–78.

19         Here, at the outset of his credibility analysis, the ALJ found that plaintiff's statements

20   about the intensity, persistence, and limiting effects of her symptoms were "inconsistent because .

21   . . the record contains *many unremarkable findings* that demonstrate significant functional

22   ability."  AR 21 (emphasis added).  The ALJ proceeded to summarize the objective medical

23   evidence of plaintiff's spine problems, noting that "imaging studies of her spine have shown

24   multiple abnormal findings."  AR 21.  The ALJ described MRI results from July 2018, October

25   2018, and October 2020, and noted that plaintiff underwent cervical diskectomy and fusion

26   surgery in November 2018.  AR 21-22.  Despite plaintiff's history of spinal degenerative disease

27   and cervical fusion, the ALJ concluded, "the medical evidence contains *many unremarkable*

28   *findings and reports* that support the ability to work within the restrictions of the above [RFC]."

6

1    AR 22 (emphasis added).

2           The ALJ next summarized examination findings in 2019 and 2020, in the course of

3    plaintiff's post-surgical treatment for back problems, as well as examination findings in 2016 and

4    2019.  AR 22-23.  At no point in this summary of evidence did the ALJ link the exam findings to

5    plaintiff's subjective testimony of chronic pain, difficulty performing physical functions, and

6    drowsiness from multiple medications.  After weighing the medical opinions, the ALJ concluded

7    his summary of the evidence as follows:

8                  While the claimant has abnormal exam findings and a history of
                   surgeries that support the existence of severe impairments, there are
9                  many unremarkable findings and reports that support the ability to
                   perform a range of light work, [including] normal neck range of
10                 motion, 5+ strength, normal upper extremities strength, and no focal
                   neurological deficits.  She had an 'unremarkable' musculoskeletal
11                 during on [sic] exam in January 2022 and normal range of motion
                   with normal strength and sensation at an exam two weeks later.
12

13   AR 26 (record citations omitted).  In summary, up to this point, the ALJ effectively discounted

14   plaintiff's symptom testimony based on a general finding of "unremarkable findings and reports,"

15   while linking few specific pieces of evidence to her testimony.

16          Turning back to the issue of credibility, the ALJ reasoned that plaintiff's reported

17   problems with handling and fingering were undercut by her ability to lift her grandson.  AT 26.

18   Similarly, her allegations of disabling mental symptoms were undercut by evidence suggesting

19   "she stopped working . . . to due stress caring for" her grandson, and her alleged physical

20   limitations were called into question because she took her grandson on walks to the park, cooked

21   dinner for him, and acted as his caretaker.  AR 26-27.  The ALJ cited plaintiff's ability to lift her

22   grandson as evidence "that she did retain a substantial ability to lift during this period and is not

23   fully consistent with her allegations."  AT 27.

24          Overall, the ALJ's credibility analysis is similar to what the Ninth Circuit found

25   insufficient in *Wade*: a summary of the medical evidence coupled with a boilerplate conclusion

26   that plaintiff's testimony as to, e.g., debilitating pain, was inconsistent with "many unremarkable

27   findings" in the record.  *See Perez v. Astrue*, 831 F.Supp.2d 1168, 1179 (C.D. Cal. 2011) ("[A]s a

28

1   matter of law a claimant's testimony on the severity of symptoms cannot be discredited *solely*

2   because it is unsupported by objective medical evidence") (emphasis in original), citing *Reddick*

3   *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ summarily concluded that plaintiff could

4   perform the physical requirements of light work without explaining what specific evidence

5   discounted her testimony as to "problems with many activities, including lifting, walking, sitting,

6   using her hands, standing, and bending" due to chronic pain and fatigue.  Moreover, as to daily

7   activities, the range of "activities cited is actually quite small and not particularly probative of the

8   ability to work." *Perez*, 831 F.Supp.2d at 1179.  The ALJ does not attempt to explain why

9   plaintiff's ability to lift a young child, take him to the park, and other short-term physical

10  exertions, translates into the ability to work in an office eight hours a day, five days a week,

11  without excessive absenteeism or time off-task due to chronic pain. *See id.* at 1180 ("None of

12  Claimant's daily activities cited by the ALJ evidence the ability to work on a regular, continuing

13  basis.").

14        Defendant cites *Kaufman v. Kijakazi*, 32 F. 4th 843, 851 (9th Cir. 2022) for the

15  proposition that the court must read the ALJ's decision as a whole to determine whether the

16  credibility analysis was flawed.  In that case, considering whether the lower court abused its

17  discretion by correcting an admitted error pursuant to a Rule 59 motion, the Ninth Circuit

18  reasoned that:

19        in its original decision, the court clearly erred by *overlooking the*
        *ALJ's full explanation*. Looking to the entire record, substantial
20        evidence supports the ALJ's conclusion that Claimant's testimony
        about the extent of her limitations conflicted with the evidence of her
21        daily activities, such as sewing, crocheting, and vacationing, and
        supports the ALJ's finding that Claimant's testimony was not fully
22        credible.

23  *Id.* (emphasis added).  Similarly, in the underlying decision at issue in *Kaufman*, the district court

24  found "that the ALJ *specifically identified which of Plaintiff's activities were inconsistent with*

25  *her symptom testimony*, and provided a clear and convincing reason for discounting Plaintiff's

26  testimony concerning her physical symptoms." *Jody K. v. Comm'r*, 2021 WL 1720947, *1 (W.D.

27  Wash. April 30, 2021) (emphasis added).  Nothing in *Kaufman* calls into question the requirement

28  that the ALJ "specifically identify" the evidence that is inconsistent with plaintiff's symptom

testimony, and it appears distinguishable from the instant case.

Based on the foregoing[2], the ALJ committed harmful error such that the finding of not disabled is not supported by substantial evidence. *See Lambert*, 980 F.3d at 1278 ("Because the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless." (quoting *Treichler v. Comm'r*, 775 F.3d 1090, 1103 (9th Cir. 2014)).

## V.   **Remedy**

With error established, the court has the discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); *Treichler*, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole leaves doubt as to whether plaintiff was disabled during the relevant period. On remand, the ALJ should provide specific, clear, and convincing reasons for discounting any portion(s) of plaintiff's subjective symptom testimony. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or

---

[2] The court does not reach the remaining claims.

1    inconsistencies resolved, on remand.  The court also does not instruct the ALJ to credit any

2    particular opinion or testimony.  The ALJ may ultimately find plaintiff disabled during the

3    entirety of the relevant period; may find plaintiff eligible for some type of closed period of

4    disability benefits; or may find that plaintiff was never disabled during the relevant period,

5    provided that the ALJ's determination complies with applicable legal standards and is supported

6    by the record as a whole.

7         Accordingly, this matter should be remanded under sentence four of 42 U.S.C. § 405(g)

8    for further administrative proceedings.

9         IT IS HEREBY RECOMMENDED THAT plaintiff's motion for summary judgment

10    (ECF No. 12) be GRANTED, defendant's cross-motion for summary judgment (ECF No. 18) be

11    DENIED, and this matter remanded for further administrative proceedings consistent with this

12    order.

13         These findings and recommendations are submitted to the United States District Judge

14    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within <u>seven</u> days after

15    being served with these findings and recommendations, any party may file written objections with

16    the court and serve a copy on all parties.  Such a document should be captioned "Objections to

17    Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

18    objections within the specified time may waive the right to appeal the District Court's order.

19    *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

20

21    Dated: March 13, 2024

22                                     EDMUND F. BRENNAN

23                                     UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28